HENRIETTE T. NOYES, PETITIONER, *v.* COMMISSIONER·OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73177. Promulgated August 29, 1934.

*Daniel B. Priest, Esq.*, for the petitioner.
*George D. Brabson, Esq.*, for the respondent.

OPINION.

MURDOCK: The State League was not incorporated. It was an association and the petitioner argues that it was a "corporation" within the meaning of that term as defined in section 701 (a) (2) of the Revenue Act of 1928. Not all associations are "corporations" and the evidence contains very little information in regard to the form of organization of this one or the manner in which it carried on its business. However, the Commissioner has not mentioned this point and it need not be decided. The stipulation in regard to the 15 percent limitation is not as complete as it should be, but apparently the parties are agreed that the 15 percent limitation would not bar a deduction equal to the amount of these two contributions.

The question most extensively presented and argued by the parties and the one upon which the decision depends is whether or not the two leagues were, or either of them was, organized and operated exclusively for educational purposes within the meaning of section 23 (n) (2)[1] of the Revenue Act of 1928. "Educational" is the word in the section picked by the petitioner for obvious reasons. She makes no contention that either league was organized or operated for any of the other purposes mentioned and it will not be necessary or helpful to consider those other purposes.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
    In computing net income there shall be allowed as deductions:

\*          \*          \*          \*.          \*          \*          \*

    (n) *Charitable and other contributions.*—In the case of an individual, contributions or gifts made within the taxable year to or for the use of:

\*          \*          \*          \*          \*          \*          \*

    (2) any *corporation, or trust, or community chest, fund, or foundation,* organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

The petitioner relies upon a prior decision of the Board, *Charles W. Dahlinger*, 20 B.T.A. 176. That decision was appealed upon another point and was affirmed. *Dahlinger* v. *Commissioner*, 51 Fed. (2d) 662; certiorari denied, 284 U.S. 673. A contribution in 1923 to the Pennsylvania League of Women Voters was allowed as a deduction. Here the year and the donees are different. Likewise the evidence is different in the two cases. Each case of this kind depends upon its own evidence. The *Dahlinger*·case is not helpful here.

Education was undoubtedly one of the most important purposes, probably the most important purpose, for which each of these leagues was organized and for which each was operated during 1930. But there was another purpose for which each was organized and operated. The organizers and operators of the leagues at all times material hereto had this other purpose in mind and were constantly active in furthering it. It was not educational, nor was it merely incidental to a broad educational purpose. Neither was it carried on merely to permit the leagues to more effectively carry on a predominant educational purpose. Cf. *Unity School of Christianity*, 4 B.T.A. 61; *George E. Turnure*, 9 B.T.A. 871; *Robert W. de Forest*, 19 B.T.A. 595; *John H. Watson, Jr.*, 27 B.T.A. 463; *James J. Forstall*, 29 B.T.A. 428; *Slee* v. *Commissioner*, 42 Fed. (2d) 184; *Weyl* v. *Commissioner*, 48 Fed. (2d) 811; *Leubuscher* v. *Commissioner*, 54 Fed. (2d) 998; *Trinidad* v. *Sagrada Orden de Predicadores*, 263 U.S. 578. This latter purpose was too important and prominent to be classed as incidental, contributory, subservient, or mediate to a primary purpose of education.

The purpose referred to was declared and manifested in many ways. The certificate of incorporation of the National League states " The business and objects of the corporation are to foster education in citizenship and to support needed legislation." The bylaws of the National League once used these same words but were later changed to state that the object of the league should be " to promote education in citizenship, efficiency in government, needed legislation, and international cooperation to prevent war " and that its policy should be not to " ally itself with or support any political party, but it may endorse measures and policies." Its " Program of Work " was divided into two main subdivisions, entitled " Recommendations for Study " and " Recommendations for Support." Items went on the latter list only after they had been studied, but, once on, both leagues actively supported or opposed specific measures in legislatures touching upon the subject and in other ways agitated for and supported the position which had been taken by the leagues on that particular subject. In many instances the leagues agitated for and

supported a particular view upon subjects extremely controversial in their nature. Other individuals and other organizations, probably equally high minded and public spirited, undoubtedly took a different view on many of these subjects. The leagues actively participated in urging the appropriation of Government funds for particular purposes, the adoption or rejection of certain bills and treaties, the cooperation of the Federal Government in the World Court and other international affairs, the adoption of a certain system of prohibition enforcement, and the participation of the Federal Government in the operation of certain utilities.

Neither the original bylaws, those in effect during 1930, nor any other document showing the original purpose of the organizers of the State League is in evidence. However, the State League was closely affiliated with the National League and, in general, its purposes and activities were the same as those of the National League. It gave particular study and support to matters affecting the State of Minnesota, including legislation in the state legislature. The National League was composed of the members of the state leagues. The plan of work of the National League was likewise the plan of work of the State League and each could call upon the other for assistance in carrying out the measures, bills, and projects listed "for support." The State League in 1930 actively assisted the National League on many of the issues mentioned above and in addition was active in supporting and opposing bills in the state legislature which were controversial in nature.

The above is merely a discussion of some of the evidence. There is evidence more favorable to the petitioner and there is other evidence supporting the respondent's determination. The evidence as a whole does not justify a finding that either of these leagues was organized or that either was operated during 1930 exclusively for educational purposes. On the contrary the evidence supports the findings of fact above set forth. The contributions were not deductible under section 23 (n) of the Revenue Act of 1928. *John H. Watson, Jr., supra; Slee* v. *Commissioner, supra; Leubuscher* v. *Commissioner, supra.*

*Decision will be entered for the respondent.*