TRUSTEES OF THE LOUISE HOME, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Trustees of the Louise Home v. Commissioner
Docket No. 8546-79.
United States Tax Court
T.C. Memo 1983-589; 1983 Tax Ct. Memo LEXIS 185; 46 T.C.M. (CCH) 1494; T.C.M. (RIA) 83589; September 26, 1983. Barry L. Weisman, for the petitioner. *186 Joyce H. Errecart, for the respondent. PARKER
MEMORANDUM OPINION PARKER, Judge: Respondent determined the following excise tax deficiencies under section 4940[1] against petitioner: Year
Deficiency
1972
$5,132.00
1973
11,617.00
1974
3,837.00
1975
4,410.00
1976
5,260.00
1977
6,124.00
The issue for determination is whether petitioner is exempt from the section 4940 excise tax by virtue of an 1875 Private Act of Congress that exempted it from all taxes by the District of Columbia and by the United States. [2]
This case was submitted fully stipulated, and the stipulated facts are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The pertinent facts are summarized below. Petitioner is a corporation with its principal offices in the District of Columbia. Petitioner's *187 Forms 990-PF and A.R., "Returns of Private Foundation Exempt from Income Tax and Annual Report," for the calendar year 1972 were filed on or before July 6, 1973, pursuant to an extension of time for filing granted through July 15, 1973. Petitioner's Form 990-PF for the calendar year 1973 reported net investment income of $196,049; such return should have reported net investment income of $290,419. Petitioner's Forms 990-PF and A.R. for the calendar year 1973 were timely filed on or about May 15, 1974, and those for the calendar year 1974 were filed in May of 1975. Petitioner's Forms 990-PF and A.R. for the calendar years 1975, 1976, and 1977 were timely filed with respondent. Pursuant to a Deed in Trust dated November 21, 1869, William W. Corcoran transferred a tract of land consisting of six lots and improvements located on square 196 in the District of Columbia to four trustees.This Deed in Trust was recorded in the District of Columbia on December 15, 1870. The trust was organized to maintain "an Institution for the support and maintenance of a limited number of gentle women, who have been reduced by misfortune, so as, in the judgment of the trustees and directoresses… *188 to be proper persons to receive such assistance…." In delivering the Deed in Trust to the trustees, William W. Corcoran wrote that: "The Deed itself sufficiently defines the general scope and nature of my intentions; but a great deal is necessarily left to your judgment and discretion, in the liberal and efficient administration of the trust." By an Act of Congress entitled "An Act To incorporate the Trustees of the Louise Home, and for other purposes," approved on March 3, 1875, petitioner was incorporated under the name "The Trustees of the Louise Home." Ch. 168, 18 Stat. (Part 3) 508 (1875). Section 2 of the Act provided: That the buildings and grounds connected therewith, and all property held by said Trustees for the purposes of said trust, on the square numbered one hundred and ninety-six, shall be free from all taxes and assessment by the municipal authorities, or by the United States, so long as the same shall be held and used for the purposes of said trust. Section 4 of the Act provided: That this act shall be subject to the action of future Congresses, to be altered, amended, or repealed as the public good may require. From 1871 until June of 1946, petitioner *189 operated a home for "gentle women, who have been reduced by misfortune." The home was located on square number 196, which opens on Massachusetts Avenue, Northwest, Washington, D.C. ("Massachusetts Avenue Building"). In 1946 petitioner sought a decree from the Federal District Court for the District of Columbia, authorizing, among other things, the sale of the original facility. On June 17, 1946, the Federal District Court entered a decree authorizing petitioner to sell the Massachusetts Avenue Building and to use the proceeds to purchase a new site and build a modern home, to be held in trust for the purposes described in William W. Corcoran's Deed in Trust. The Federal District Court made a finding that the sale of the original facility was "essential to the more efficient administration of the charity created by the aforesaid deed in trust and the maintenance of The Louise Home, and that owing to changed conditions the purposes of the trusts contained in said deed in trust will be best sustained and promoted thereby." Pursuant to the Federal District Court decree, petitioner sold the Massachusetts Avenue Building and grounds in 1946 and purchased real property located at 2145 *190 Decatur Place, Northwest, Washington, D.C. ("Decatur Place Building"). Between 1946 and 1976, petitioner operated the Decatur Place Building as a home for women. In 1975 petitioner filed in the Superior Court of the District of Columbia a complaint for declaratory judgment of charitable deed in trust and for instructions authorizing the trustees to deviate in administration of the trust. In that action the living heirs-at-law and next-of-kin of William W. Corcoran were the defendants. The complaint alleged changed circumstances in that the Decatur Place Building was in an expensive area of embassies and was not zoned for nursing home facilities which had become a pressing need of the elderly women then occupying The Louise Home. On March 7, 1975, the Superior Court of the District of Columbia entered a judgment authorizing petitioner, interalia, to sell the Decatur Place Building; to add the proceeds to the corpus of the trust; to join with other nonprofit and charitable institutions in the operation of the housing and nursing facilities for persons in need thereof; and to provide for the treatment and care of current residents of The Louise Home. The Superior Court *191 found as a fact that "there is a need for facilities for aging persons in the District of Columbia to be cared for in homes like those of The Louise Home, but in modern times nursing facilities are, to all intents and purposes, a necessary addition in order to serve the purposes of the Trust…." The Superior Court further found that: That, as is well known, many changes have occurred since 1869 in the economics of the people of this and all other urban communities, and in laws, social attitudes, and the availability of the means of support of persons not fully able to maintain themselves without outside help; and the donor, W. W. Corcoran, could not have foreseen such events as the social security laws, the general rise in standards of living, improvements in providing nursing care and medical services to the aged and the poor, increases in life-spans; that therefore said donor would not have been expected to put in words any directions to the Trustees as to what action should be taken to meet exigencies resulting from such changes in mores, economics and law; and specifically the Court finds that, had he been able to foresee these events, it would have been expressed by said donor *192 in the Deed in Trust, because it appears to be his intent that the Trust be perpetual; that the Trustees should be authorized to change the location of The Louise Home, construct and provide facilities meeting the needs of the time, including nursing facilities, and to take all and any action to implement and carry out the objectives of the Deed in Trust which the donor would have taken as a prudent man of business, civic affairs and philanthropy, including the purchase and/or construction of expanded or better facilities, or the combination or merger with one or more institutions having the same or similar objectives, but provided always that there shall be a separate and identifiable physical identity always to be called The Louise Home. Pursuant to the March 7, 1975 Superior Court decree, petitioner executed an agreement on April 8, 1976, with The Abraham and Laura Lisner Home for Aged Women, also of Washington, D.C. ("The Lisner Home"). The agreement provided, interalia, that The Lisner Home would furnish facilities and services to The Louise Home's current residents, and to other persons in the future as petitioner desired who met Lisner's requirements and as accommodations *193 permitted; and that petitioner would pay to The Lisner Home for these services a proportionate share of The Lisner Home's operating expenses. Petitioner sold the Decatur Place Building after April 8, 1976, in compliance with the Superior Court decree. Up to the present time, petitioner has operated in accordance with the applicable court decrees and its agreement with The Lisner Home. By letter dated April 15, 1938, respondent advised petitioner that it was exempt from Federal income taxation. By letter dated November 29, 1960, respondent confirmed its earlier position that petitioner was exempt from Federal income taxes by virtue of the 1875 Act. By letter dated March 13, 1972, respondent ruled that petitioner was exempt from the excise tax on investment income imposed by section 4940, "as long as the property of The Trustees of the Louise Home is held and used for the purposes of the trust which was established by William W. Corcoran and which was incorporated by an Act of Congress on March 3, 1875." On March 3, 1976, respondent issued a favorable ruling holding that petitioner's proposed agreement with The Lisner Home would not adversely affect petitioner's exemption from *194 Federal income tax under section 501(c)(3). Respondent did not rule at that time with regard to section 4940. By letter dated February 21, 1978, respondent retroactively revoked its March 13, 1972 ruling and concluded that petitioner was no longer exempt from the section 4940 excise tax under the 1875 Act of Congress because petitioner no longer occupied the Massachusetts Avenue property referred to in the 1875 Act. Petitioner is a private foundation under section 509(a) and exempt from Federal income taxes under section 501(c)(3). Section 4940 imposes an excise tax upon the net investment income of private foundations. This excise tax is a "user fee" that Congress added to the tax laws by the Tax Reform Act of 1969 and is the method by which Congress intended to make private foundations pay the costs of their supervision by the Internal Revenue Service. See Julia R. and Estelle L. Foundation v. Commissioner,70 T.C. 1, 6-7 (1978), affd. 598 F. 2d 755 (2d Cir. 1979). There is no dispute that but for the 1875 Act of Congress, petitioner would be *195 subject to the section 4940 excise tax. Respondent originally determined that petitioner was exempt from the excise tax under its 1875 Congressional charter and tax exemption. Respondent now claims that petitioner has lost its exemption under the 1875 Act because it sold in 1946 the Massachusetts Avenue property where it initially operated The Louise Home. We disagree. Section 2 of the 1875 Act provided: That the buildings and grounds connected therewith, and all property held by said Trustees for the purposes of said trust, on the square numbered one hundred and ninety-six, shall be free from all taxes and assessment by the municipal authorities, or by the United States, so long as the same shall be held and used for the purposes of said trust. (Emphasis added.) Respondent reads the exemption as being limited strictly to the property on square number 196, and argues that when petitioner, with local court approval, sold that particular tract of land in 1946, the Congressionally-granted exemption terminated. We think that the language limiting the exemption refers to the purposes of the trust, not to the specific location of the property. The language referring to *196 the Massachusetts Avenue property simply identifies petitioner's property; it does not, as we read it, impose the kind of limitation respondent suggests. Moreover, the legislative history supports our construction. The Senators opposing the grant of exemption to petitioner also understood section 2 as exempting property to be acquired in the future, which would not be the case if, as respondent argues, the exemption were limited to the Massachusetts Avenue property originally held by petitioner. See 3 Cong. Rec. 965 (Feb. 4, 1875), Statements of Senators Edmunds and Sherman. Respondent's narrow construction of the 1875 Act also violates the proposition, an exception to the rule strictly construing tax exemptions, that exemptions to charitable institutions are to be liberally construed because of the benefits derived by the public from their operations. American Institute for Economic Research v. United States,157 Ct. Cl. 548, 302 F. 2d 934, 937 (1962), cert. denied, 372 U.S. 976 (1963); C.F. Mueller Co. v. Commissioner,190 F. 2d 120, 122 (3d Cir. 1951); *197 Harrison v. Barker Annuity Fund,90 F. 2d 286, 288 (7th Cir. 1937); Estate of Whitehead v. Commissioner,3 T.C. 40, 48 (1944), affd. sub nom., Commissioner v. Citizens & Southern National Bank,147 F. 2d 977, 978 (5th Cir. 1945). See also Coastal Club, Inc. v. Commissioner,43 T.C. 783, 803 n. 2 (1965), affd. 368 F. 2d 231 (5th Cir. 1966). Finally, we are not persuaded by respondent's argument that the Tax Reform Act of 1969, in enacting section 4940, also repealed petitioner's 1875 tax exemption. Although the 1875 Act reserved to Congress the power to amend or repeal petitioner's charter and tax exemption, nothing in the text or legislative history of the Tax Reform Act of 1969 indicates any intention to abrogate petitioner's 1875 exemption. The doctrine of repeal by implication is not favored. American Bank & Trust Co. v. Dallas County,463 U.S.    , 103 S. Ct. 3369, 3377 (1983); Estate of Smallwood v. Commissioner,11 T.C. 740, 742-743 (1948); Topek v. Commissioner,9 T.C. 763, 767-768 (1947). *198 "In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable. Georgia v. Pennsylvania R. Co.,324 U.S. 439, 456-457 (1945). " Morton v. Mancari,417 U.S. 535, 550 (1974). Here, Congress' general intent to make private foundations pay the costs of their own supervision through a "user fee" in the form of an excise tax is not irreconcilable with a specific long-standing tax exemption to a single charitable foundation. We conclude that as long as petitioner's property is used for the purposes declared in William W. Corcoran's Deed in Trust, petitioner is exempt from the section 4940 excise tax, unless Congress acts specifically to strip petitioner of its exemption. Decision will be entered for petitioner.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question.↩
2. As a result of our resolution of this issue, we need not address the statute of limitations issue for the years 1972, 1973, and 1974.↩